**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| **PHILLIPS INVESTMENTS LLC,** | ) | **CHAPTER 11** |
| | ) | |
| Debtor. | ) | **CASE NO. 14-61444** |
| _____ | ) | |

### EMERGENCY MOTION TO APPOINT CHAPTER 11 TRUSTEE

COMES NOW Great Wall Supermarket of GA. Inc. ("**Great Wall**"), by and through counsel, and pursuant to Bankruptcy Code § 1104 and Federal Rules of Bankruptcy Procedure 2007.1 and N.D. Ga. B.L.R. 9013-1, respectfully moves this Court to appoint a Chapter 11 trustee in this case (i) for "cause," on the grounds that Debtor, Phillips Investments, LLC ("Debtor"), has demonstrated incompetence, gross mismanagement, and possible fraud by failing to repair and/or fix the leaking roof at the real property located at 2300 Pleasant Hill Road, Duluth, Georgia 30096 (the "**Property**"); and, (ii) because the appointment of a trustee is in the best interests of the creditors and other parties in interest since the debtor's failure to repair the roof has resulted in Health Code violations and severe safety issues that threaten the ability of Great Wall, the anchor tenant in Property, to continue its operations.  In support of this *Emergency Motion to Appoint Chapter 11 Trustee* (the "**Motion**"), Great Wall shows the Court the following:

**I.      Procedural History and Facts**

1. Debtor filed its voluntary Chapter 11 bankruptcy petition initiating this case on June 11, 2014 (the "**Petition Date**").  [ECF No. 1].

2. Debtor filed its *Second Amended Chapter 11 Plan* on December 17, 2015 [ECF No. 154] (the "**Amended Plan**").[1]

3. Great Wall objected to the Amended Plan and filed its *Objection to Debtor's Second Amended Plan of Reorganization* [ECF No. 195] (the "**Objection**") on January 20, 2016 for, among other things, the Debtor's Amended Plan was not feasible, is speculative, and not proposed in good faith. The Amended Plan does not identify the Lease between Debtor and Great Wall and does not address the defaults thereunder or provide any means of curing the defaults.

4. Great Wall operates a highly successful supermarket and is the primary tenant of Debtor at the Property.

5. The roof at the Property leaks all over the supermarket whenever there is rain and is in need of immediate replacement.

6. The poor state of the roof has severely affected Great Wall's grocery business and poses serious health and safety issues for Great Wall, its employees, and customers.

7. Great Wall filed a *Motion to Repair Roof and Setoff Security Deposit and Rent* [ECF No. 210] (the "**Motion to Repair Roof**") seeking authorization to repair and replace the roof of the Property and allowing a claim in favor of Great Wall and against Debtor for all costs incurred in repairing the roof at the Property and authorizing Great Wall to set off costs incurred in making such repairs in subsequent rental payments and the security deposit to Debtor. The Court declined to hear the Motion to Repair Roof. [ECF No. 231].

---

[1] Pursuant to the *Consent Order Vacating Confirmation Hearing and Extending Cash Collateral Usage Pending Auction* [ECF No. 217], Debtor is to withdraw the Amended Plan and, instead, will sell the Property at auction. Debtor filed *Debtor's Motion for an Order (i) Approving the Retention of Ten-X and (ii) Approving Sale Procedures in Connection with the Sale of Certain Real Property of the Debtor Free and Clear of All Liens, Claims and Interests; and (iii) Scheduling an Auction* [ECF No. 218].

8. However, on February 19, 2016, Debtor filed an *Emergency Motion for Entry of Order Authorizing It to Enter into Contract to Repair Roof and Use Cash Collateral* [ECF No. 208] (the "**Cash Collateral Motion**"). The Court granted the Cash Collateral Motion on February 22, 2016 (the "**Repair Order**"). [ECF Nos. 213 and 214]. The Repair Order provides that Debtor is authorized to use up to $30,000.00 of East West Bank's cash collateral to pay GMC Blue Service, Inc. ("**GMC**")[2] to repair the roof. At the hearing on the Cash Collateral Motion, Debtor represented the GMC would begin repairing the roof within 48 hours of entry of an order approving the Cash Collateral Motion.

9. On Tuesday, February 23, 2016, Great Wall was informed by Debtor that GMC would commence the roof repairs on Thursday, February 25, 2016 and that the repairs would take "5 business days or less." *See* Letter from GMC to Debtor attached hereto as **Exhibit A**.

10. No roof repairs commenced on Thursday, February 25, 2016. In fact, no one from GMC appeared at the Property on February 25, 2016.

11. On Tuesday, March 1, 2016—when rain was in the forecast—GMC workers appeared at the Property to begin the roof repairs. However, no repairs appeared to have been conducted. Rather, it appears that the GMC workers only did a little white washing and it did not appear that the roof was cleaned prior to the white washing. *See* pictures attached hereto as composite **Exhibit B**.

12. On the evening of March 1, 2016, it rained and the roof leaked thereby continuing to cause damage to Great Wall. *See* pictures of the damage and health and safety hazards attached hereto as composite **Exhibit C**.

---

[2] GMC is the roofing company that Debtor requested authorization from the Court to contract with to temporarily repair the roof. GMC informed the Debtor that it "could stop *all* leaks in the roof for a minimum of *six months* for the total price of $30,000, including labor and materials." *See* ECF No. 208 at ¶ 8.

3

13. On March 2, 2016, Great Wall's counsel alerted Debtor's counsel that the repairs had not been made and that the roof is still leaking.

14. On March 2, 2016, Debtor's counsel contacted GMC to inquire about the nonperformance of the repairs. GMC claims that the letter it sent (*see* Exhibit A) stating that the roof repairs would be completed in five (5) business days was sent in error and that pursuant to its contract with Debtor GMC has two (2) weeks to complete repairs. GMC claimed to have been on the roof of the Property every day since February 25; however, that is not true because workers first appeared on the roof on March 1, 2016. Additionally, no workers were on the roof on March 2, 2016.

15. It appears that Debtor has been misinforming its counsel. Debtor told its counsel that GMC had been up on the roof every day and that the repairs had been made. However, GMC workers were only at the Property twice: once on February 23, 2016 to apparently inspect the roof and again on the afternoon of March 1, 2016 to white wash the roof in advance of rain forecast for that evening.

16. On March 3, 2016, GMC sent a crew over to the Property to repair the roof. The roofing crew used BASF Master Seal NP1 sealing glue. However, this is not a sufficient repair for the roof:

   a. The NP1 product was never intended to patch or repair single-ply roofing.

   b. The NP1product is primarily used for filling and sealing joints or cracks between two different materials or similar material (such as between two panels of pre-cast concrete).

   c. The only intended roofing use for the NP1 product is to patch cracks in clay or concrete tile.

   d. There is no mention of repairing single-ply roofing in any NP-1 product literature.

4

e. Great Wall representatives did not observe any preparation (such as cleaning, scrubbing or priming) of the existing single-ply even though preparation of the materials to be adhered to is required in the instructions.

f. Polyurethane (the main component of NP-1) will adhere to most materials, so the roof patching may appear to work for a short period of time, but it will eventually peel at the edges and leak.

Indeed, the roof leaked again the afternoon and evening of March 3rd. *See* pictures of the damage and health and safety hazards attached hereto as composite **Exhibit D**.

17. In summary, on February 22 the Debtor represented to the Court, East West Bank, Great Wall, and to its counsel that Debtor would have the roof repaired beginning 48 hours after the entry of this Court's order approving the Cash Collateral Motion. Great Wall was told that the repairs would start on February 25th and would be completed within five (5) business days; however, no work was undertaken until March 1 and March 3. What little repair work has been done has been ineffective. This follows Debtor's prior failures to repair the roof as detailed in Great Wall's Motion to Repair Roof, a copy of which is attached hereto as **Exhibit E.**

18. The leaking roof also presents serious health code violations and extreme safety hazards for Great Wall, its employees, and its customers.

19. Specifically, the leaking roof is in violation of the Gwinnett County Health Code and § 511-6-1-.07(2)(n)[3] of the Rules of Department of Public Health which reads:

> **(n) Exterior Walls and Roofs, Protective Barrier.** Perimeter walls and roofs of a food service establishment shall effectively protect the establishment from the weather and the entry of insects, rodents, and other animals.

20. In addition, the leaking roof is also a violation of § 1503.1[4] of the International Building Code, which states that:

---

[3] http://www.gnrhealth.com/wp-content/uploads/2012/07/Georgia-Food-Code-Rules_Effective-2015-11-01.pdf

[4] http://codes.iccsafe.org/app/book/content/2015-I-Codes/2015%20IBC%20HTML/Chapter%2015.html

> Roof decks shall be covered with *approved* roof coverings secured to the building or structure in accordance with the provisions of this chapter. Roof coverings shall be designed and installed in accordance with this code and the *approved* manufacturer's instructions such that the roof covering shall serve to protect the building or structure.

21. Finally, the leaking roof is causing severe liability issues for Great Wall as it has created very hazardous conditions in the store and it is only a matter of time before an employee and/or customer is injured.

## II. The Appointment of a Trustee is Justified

22. 11 U.S.C. § 1104 mandates that a trustee be appointed for "cause" or "if such appointment is in the best interest of creditors." 11 U.S.C. § 1104(a)(1)&(2). Here, both conditions are met.

23. Debtor is a special purpose entity and that owns and operates the Property, a shopping center. For months the Debtor has failed in its efforts to repair the roof of its anchor tenant. *See* Motion to Repair Roof. More recently, as set forth above and attached, Debtor has failed to ensure that its roof contractor, GMC, would timely repair the roof, as represented to the Court and to parties in interest. Debtor and GMC have misrepresented when work would be completed and when work has been done. Moreover, Debtor has failed to ensure that the repairs undertaken by GMC would be effective. This is either incompetence or gross mismanagement establishing "cause" for the appointment of a trustee under 11 U.S.C. § 1104(a)(1). *See In re Brown*, 31 B.R. 583, 585 (D.D.C. 1983) (mismanagement of debtor's largest asset resulted in appointment of trustee). With respect to representations regarding when work has been done and when it will be completed, both Debtor and GMC have not been truthful. Such fraud establishes further "cause" for the appointment of a trustee under 11 U.S.C. § 1104(a)(1).

6

24. It is also in the best interests of creditors for a trustee to be appointed pursuant to 11 U.S.C. § 1104(a)(2) for two reasons. First, the ongoing health and safety issues outlined above threaten closure of the Great Wall supermarket. If Great Wall is forced to suspend operations, this will negatively affect, in a substantial way, the value of the Property to the detriment of East West Bank and other creditors of Debtor. Also, absent credible and competent management of the Property, Great Wall, the anchor tenant, may leave, again resulting in a substantial reduction in the value of the Property to the detriment of creditors.

### EXPEDITED HEARING AND LIMITED NOTICE REQUESTED

25. The roof needs to be repaired as quickly as possible to stop the leaks. Among other things, the leaks pose severe health and safety issues to Great Wall and its customers. The Debtor has failed to effectuate the proper repair of the roof. Accordingly, Great Wall requests a hearing on the Motion as soon as possible. Moreover, given the nature of the relief requested, and the urgency of the need for repairs, Great Wall requests limiting notice of the hearing to Debtor, East West Bank, and the United States Trustee.

WHEREFORE, Great Wall respectfully requests that the Court: (1) appoint a Chapter 11 trustee in this case, on the grounds that "cause" exists under 11 U.S.C. § 1104(a)(1) and that such an appointment is in the best interests of creditors pursuant to 11 U.S.C. § 1104(a)(.2), (2) schedule a hearing on this Motion on an emergency basis; (3) enter an order granting this Motion at the conclusion of such hearing; and (4) grant all other relief that the Court deems just and proper in the premises.

[*SIGNATURE PAGE FOLLOWS*]

Respectfully submitted, this 4th day of March, 2016.

**BARNES & THORNBURG LLP**

*/s/ John W. Mills*
John W. Mills (GA State Bar No. 509705)
Gary S. Freed (GA State Bar No. 275275)
3475 Piedmont Road N.E.
Suite 1700
Atlanta, Georgia 30326
Telephone No. (404) 846-1693
Facsimile No. (404) 264-4033
*John.Mills@btlaw.com*
*Gary.Freed@btlaw.com*

*Attorneys for Great Wall Supermarket of GA, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that I have this day caused the foregoing *Motion to Appoint Chapter 11 Trustee* to be electronically filed with the Clerk of Court using the CM/ECF system which will send automatic notification of such filing to the following counsel of record:

J. Robert Williamson
J. Hayden Kepner, Jr.
**Scroggins & Williamson, P.C.**
127 Peachtree Street, NE
1500 Candler Building
Atlanta, Georgia 30303

This 4th day of March, 2016.

*/s/ John W. Mills*
John W. Mills (GA State Bar No. 509705)

DMS 3794917v1

8